BRADFORD (JUDSON v.). See Case No. 7,-564.

BRADFORD (THOMSON v.). See Case No. 13,981.

BRADFORD (WESTCOT v.). See Case No. 17,429.

---

## Case No. 1,770.

### The BRADICH JOHNSON.

[10 Chi. Leg. News (1878) 353.]

District Court, S. D. Alabama.[1]

ADMIRALTY—LIBEL FOR STATE AND COUNTY TAXES—LIEN FOR SUPPLIES—MORTGAGE LIEN—PRIORITY.

1. A claim for state and county taxes assessed against a steamboat, is one arising under

---

[1] [Reversed by circuit court in Baldwin v. The Bradish Johnson, Case No. 798.]

state laws, and in which there is no maritime quality or character, and is not the subject of libel in a court of admiralty.

2. Though no lien arises under the maritime law, for supplies and materials furnished a vessel at the home port, and though the state cannot confer jurisdiction upon federal courts, yet it can give a lien for a claim arising out of a maritime contract, and such lien can be enforced in the admiralty courts. The law of Alabama having created a lien upon vessels for supplies and materials furnished in the home port, such a claim outranks a claim under a mortgage, and should first be paid.

[Cited in The Theodore Perry, Case No. 13,-879; The Guiding Star, 9 Fed. 524.]

[Reversed in Baldwin v. The Bradich Johnson, Case No. 798.]

[On exceptions to commissioner's report. [In admiralty. Libel by Edward Baldwin against the steamer Bradich Johnson, J. M. Stone, and J. H. Stone, claimants. Other creditors intervened, claiming liens for seamen's wages, supplies furnished in home and foreign ports, etc. E. B. Lott, tax collector of Mobile county, claimed a lien for taxes, and Charles Cavaroe, Jr., claimed a lien by virtue of a mortgage. There was reference to a commissioner to report a scheme of distribution. Report confirmed.]

W. G. Jones and T. H. McCartney, for exceptions.

J. L. Smith, contra.

BRUCE, District Judge. The first exception which I shall notice is that filed on behalf of E. B. Lott, tax collector of Mobile county, Alabama. It appears that state and county taxes had been levied upon said steamboat, for the years 1876-7, which are unpaid. The steamboat was registered in the city of Mobile, and under the laws of Alabama was there liable for state and county taxes. It is claimed that a tax due to the state which is made a lien upon the property, must from its nature be paramount, and take precedence of all claims due to individuals. It is to be observed, however, that this is a court of admiralty and maritime jurisdiction, and the question arises, can this court take jurisdiction of a claim which has in it no maritime quality or character? True, the claim for state and county taxes due and unpaid is, under the revenue law of the state, made a lien upon the property, but it is not a maritime lien, and the state cannot confer jurisdiction upon this court. The claim is one which is not the subject of a libel in an admiralty court, and the court has no jurisdiction of the claim, and cannot enforce the lien. The claim of the tax collector of the city of Mobile, for taxes alleged to be due the city of Mobile, rests upon no higher ground than the claim for state and county taxes, and these claims are postponed until the maritime claims are paid.

The next exception which I shall notice is that of Charles Cavaroe, Jr., the assignee of a mortgage which was given by the owners

of the steamboat to secure certain notes for part of the purchase money of said steamboat, which mortgage was duly filed for record in the custom house, in the city of Mobile, as provided by act of congress, prior to the accruing of the claims for supplies and materials furnished, and repairs done at Mobile, the home port of the steamboat. The proposition is, that the mortgage claim outranks the claims for supplies and materials furnished, and repairs done at the home port, and should be first paid. Though no lien arises under the maritime law for supplies and materials furnished, or for repairs done at the home port, as held by the supreme court of the United States, in the case of The Lottawana, 21 Wall. [88 U. S.] 558, yet these claims arising, as they do, upon maritime contracts, are within the admiralty and maritime jurisdiction, and although the state cannot confer jurisdiction on the United States courts, yet it can give a lien for a claim arising out of a maritime contract, and the lien, when thus given, can be enforced in the admiralty courts of the United States. This view of the subject is sustained by the case of The Lottawana, above cited.

The law of Alabama, which creates domestic liens upon vessels, is to be found in chapter 8, § 3465, of the Revised Code, and is as follows: "Section 3465. Lien Declared. A lien is hereby created on all ships, steamboats and other water crafts, whether the same be registered, enrolled, licensed, or not, that may be built, repaired, fitted, furnished, supplied or victualled within this state; for work done, or materials supplied by any person within this state; for or concerning the building, repairing, fitting, furnishing, supplying or victualling such ships, steamboats or other water crafts; and for the wages of the masters, laborers, stevedores and shipkeepers of such vessels, steamboats, or other water crafts, in preference to other debts due and owing from the owners thereof, which said lien may be asserted in any court of competent jurisdiction." It appears, then, that the law of Alabama has created a lien in favor of those who furnish materials and supplies to vessels at the home ports within the state. We have already seen that it is competent for a state to create such a lien in favor of a claim arising out of a maritime contract, and it follows that such a claim outranks a claim under a mortgage, and is to be first paid. In support of the contrary view, the following cases are cited: The John T. Moore [Case No. 7,430]; The Grace Greenwood [Id. 5,652]; The Kate Hinchman [Id. 7,620]. The two latter cases seem to sustain the position taken, but the case of the John T. Moore does not sustain that position, as the following quotation from the opinion of the court will show: "The claims for materials and supplies furnished, and repairs done in the home port, by libellant and others, cannot take preced-

ence over the Moore mortgage and Coyle claim, as such claims were not recorded under the state law, so as to acquire a lien against third persons;" from which language there is a clear implication that if these claims had been recorded, and the state law fully complied with, they would have been entitled to priority. There is the same implication in the case of The Lottawana, above cited; and in the case of The Alice Getty [Case No. 193]—Withey, J.—it is held that mortgage liens are postponed to all maritime claims, whether they arise under the general maritime law or by the local law of the state, a lien is given.

It is to be observed that the law of Alabama, above cited, does not require claims for materials and supplies furnished at home port to be recorded in order to make them a lien against third persons. In this respect the law of Alabama differs from the law of Louisiana and other states. In this case, the state law granting the lien was fully complied with, and therefore these claims for supplies and materials furnished at home port take precedence of the mortgage claim here set up, and are to be first paid. It is so ordered.